**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **B.H. and K.H, Individually and on Behalf of D.H., a Minor;** | : | **Case No.: 2:26-cv-631** |
| **T.P., Individually and on Behalf of E.P., a Minor;** | : | **Judge:** |
| **P.H-C., Individually and on Behalf of C.C., a Minor;** | : | **Magistrate Judge:** |
| **and all others similarly situated;** | : | |
| **Plaintiffs,** | : | |
| **v.** | : | |
| **The Ohio Department of Education and Workforce;** | : | |
| **and** | : | |
| **Stephen Dackin, in his official capacity as Director of the Ohio Department of Education and Workforce;** | : | |
| **Defendants.** | : | |

---

**CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

---

## I. INTRODUCTION

1. Each paragraph in this Complaint incorporates all others.

2. This Complaint is brought because the Ohio Department of Education and Workforce ("DEW"), the state educational agency ("SEA") responsible for ensuring the implementation of the Individuals with Disabilities Education Act ("IDEA") in Ohio, has failed to provide Plaintiffs, and the class of students with disabilities and their parents that they seek to

represent, with the procedural safeguards and due process rights they are entitled to under IDEA, resulting in substantial educational harm and the denial of a free and appropriate public education ("FAPE").

3. Plaintiffs D.H., E.P., and C.C. are three students among approximately 525 students with disabilities who were placed by their public-school districts at various Warren County Educational Service Center ("WCESC") programs and who were the subject of a systemic state complaint, CP# 0098-2022, filed on May 31, 2022, by Disability Rights Ohio ("DRO") with DEW's Office for Exceptional Children ("OEC"). The complaint alleged a variety of violations of IDEA by WCESC and the school districts, including but not limited to a failure to provide access to academic curriculum, failure to implement individualized education programs (IEPs), and failure to provide appropriate behavioral interventions, that resulted in the denial of FAPE to the students.

4. The OEC completed its investigation of the complaint by reviewing the education records of a sample of 203 students, interviewing their parents or sending a survey for parents to complete, and conducting on-site visits and interviews of WCESC staff, among other activities. At the conclusion of its investigation, OEC determined that violations of IDEA did occur that resulted in FAPE denials for a majority of the students in the sample.

5. OEC issued separate letters of findings with specific corrective action steps to WCESC and each school district on or about December 16, 2022. Corrective action included significant compensatory education awards for many of the students in the sample, among other training and policy requirements, with a due date of December 16, 2023.

6. After receiving pressure and threats of litigation from WCESC and a small number of the school districts involved, members of senior leadership at DEW took control of

the adjudication of the complaint from the OEC and "paused" all corrective action for every school district and WCESC for more than one year. During this time, DEW senior leadership engaged in an arbitrary and one-sided "reconsideration" process with WCESC and school districts, that is specifically prohibited by its own policies and procedures, while purposefully and completely excluding all parents and students from participating. DEW met privately with WCESC and some of the school districts to get input on corrective action requirements and requested additional documentation from districts to support the reconsideration, but provided no notice or opportunity for parents or students to do so.

7. After more than 18 months had passed since the complaint was filed, DEW senior leadership mandated revisions of the corrective action for every school district and reduced or eliminated the compensatory education awards of many of the students under the guise of a vague and inconsistent "qualitative analysis." These revisions included a blanket elimination of services for some students who had graduated, moved, or otherwise no longer attended their districts, without any analysis of whether they still required compensatory services to receive a FAPE, despite clear authority that students may still be entitled to compensatory education in those circumstances. The revisions also reduced or eliminated compensatory education for students even if districts failed to provide any additional documentation to support a reduction. In doing so, DEW deprived a significant number of students with disabilities of substantial educational benefits without notice, participation, or due process.

8. In addition to revising the corrective action and compensatory education awards for the students in the sample, DEW ignored its obligation to fully and promptly correct IDEA noncompliance by refusing to determine whether the remaining students not included in the original sample were entitled to compensatory education to remedy FAPE denials.

9. The parents and students involved in the complaint were never notified that IDEA violations had occurred, that students had been denied FAPE, that compensatory education was awarded to students, or that a reconsideration was taking place to recalculate and revise what services were owed to these students for them to receive FAPE. They were never provided with an opportunity to provide additional input, documentation, or information for the reconsiderations despite WCESC and districts being provided this advantage.

10. DEW's delay and "pause" of corrective action for more than one year further denied students FAPE and subjected them to an unreasonable length of time without necessary educational services.

11. DEW issued revised corrective action letters to school districts on a rolling basis, beginning in December 2023 and continuing throughout January 2024. The revised corrective action provided an entire additional year for completion. Districts were required to provide and document all compensatory education services by December 2024 and send proof of service logs to DEW by the same date unless the district produced documentation that the parent explicitly declined or denied compensatory services.

12. Once the revised letters of findings were distributed to districts, DEW abandoned all enforcement efforts for its own revised corrective action. Districts that did not voluntarily send documentation of compliance and completion of the required compensatory education services received no follow up communication, consequences, or plan from DEW, and many students, including Plaintiffs, have received nothing. In effect, the revised corrective action became a toothless suggestion rather than real enforcement of IDEA compliance and protection of the rights of students with disabilities.

13. DEW senior leadership engaged in these actions, despite the objections of their own special education experts in the OEC, to placate threats from WCESC and school districts who were unhappy with the systemic state complaint findings, undermining one of the few procedures that parents and students are afforded to enforce their rights under IDEA.

14. DEW's actions with respect to its state complaint process, and its ongoing refusal to properly enforce even the revised corrective action, violate its explicit obligations under IDEA to ensure a system of effective procedural safeguards for students with disabilities and their parents, to promptly correct IDEA violations in no more than one year, and to guarantee a FAPE to students with disabilities in the state.

15. These continuous violations jeopardize the neutrality of the procedural safeguards that students with disabilities are entitled to and demonstrate both an intentional disregard of DEW's statutory requirements to protect the rights of students with disabilities in Ohio, and an abdication of its general supervisory authority as the SEA, in favor of administrative or political convenience. State-level failure and interference such as this creates a current systemic issue that subjects DEW to liability under IDEA.

16. Plaintiffs D.H., his parents B.H. and K.H., E.P., his mother T.P., and C.C. and his mother P.H-C., are part of the class of approximately 525 students and their parents or guardians that have been deprived of a FAPE, their procedural safeguards, due process rights, and substantial educational benefits because of DEW's ongoing failure to comply with its own policies and procedures and IDEA. They seek to represent all similarly situated students and their parents.

17. After learning that D.H. had been denied a FAPE and awarded compensatory education services, and that DEW had "reconsidered" the findings and corrective action and

significantly reduced D.H.'s compensatory education award without their knowledge or participation, B.H. and K.H. attempted to enforce their rights by filing a due process complaint and request for hearing in February 2024, as provided for in DEW's policies and procedures.[1]. The complaint was brought on behalf of D.H. and all similarly situated students, against DEW as the party who violated IDEA, failed to provide students and parents effective procedural safeguards, unreasonably delayed corrective action and actively participated in denying D.H. – and the class of students – a FAPE. Despite expressing serious concern over DEW's actions, the impartial hearing officer ("IHO") and state level review officer ("SLRO") dismissed the due process complaint on April 25, 2024 and July 17, 2024, respectively, holding that DEW cannot be a party to due process proceedings under IDEA.[2]

18. On September 23, 2024, B.H. and K.H. filed a class action lawsuit against Defendants in this Court, on behalf of themselves and D.H., seeking to represent the class of students and parents harmed by DEW's conduct. B.H. and K.H. sought declaratory relief that DEW had violated IDEA and the Fourteenth Amendment of the U.S. Constitution and injunctive relief prohibiting DEW from continuing to deny the class their federal rights. In September 2025, the complaint was dismissed without prejudice for lack of standing, stemming from D.H.'s then-status as a privately educated student.[3]

19. Unsurprisingly, the December 2024 due date for the completion of compensatory education services passed, and DEW continues to willfully ignore its express obligations under IDEA by refusing to enforce corrective action. D.H., E.P., and C.C. have received no

---

[1] Ohio Department of Education and Workforce, Office for Exceptional Children, State Complaint Policy C-5 (July 21, 2021).

[2] Ohio is a two-tier due process state for IDEA disputes. An impartial hearing officer (IHO) is the decision-maker at the first tier. The losing party must appeal to a state level review officer (SLRO) to exhaust the administrative remedy prior to filing in court. Ohio Admin. Code 3301-51-05 (K)(13)(b).

[3] *B.H., et al. v. Ohio Department of Education and Workforce, et al.*, No. 2:24-cv-3966, 2025 WL 2531425 (S.D. Ohio September 3, 2025).

compensatory services at all, are still being denied their federal rights, and are still suffering educational harm as a result. Plaintiffs have brought this action against Defendants to enforce these fundamental rights.

20. Plaintiffs have exhausted their administrative remedies as required by IDEA, but more importantly, should not be required to exhaust administrative remedies. Plaintiffs' claims against Defendants, and the remedies they seek, are not available through the IDEA administrative process. As evidenced by the previous due process decisions, Plaintiffs' claims implicate state-level procedural failures and the integrity and neutrality of the administrative dispute resolution system itself, issues that a hearing officer seemingly cannot exert jurisdiction over, rather than individual FAPE claims that are specific to each student or their individualized education programs. Plaintiffs have already availed themselves of an appropriate process to resolve their individual FAPE claims against local educational agencies and were granted substantive relief as a result. Defendants' subsequent failure to uphold DEW's statutory and constitutional obligations falls squarely outside of these individual determinations. Exhaustion in this case is futile, with over 500 students and their parents having nearly identical claims against DEW as D.H. that would need to be brought, and dismissed, by a hearing officer before they could proceed with this action as a class.

21. Plaintiffs seek declaratory relief that Defendants are violating IDEA by denying Plaintiffs, and the proposed class, of the procedural safeguards they are entitled to and failing to implement an effective and neutral state complaint process, causing ongoing and substantial educational harm for D.H., E.P., and C.C., and the rest of the students in the class.

22. Plaintiffs seek declaratory relief that Defendants are violating IDEA by failing to carry out DEW's general supervisory authority and promptly correct known instances of

noncompliance for each individual student, as well as systemic noncompliance, causing ongoing and substantial educational harm for D.H., E.P., and C.C., and the rest of the students in the class.

23. Plaintiffs seek declaratory relief that Defendants are violating IDEA by failing to ensure that FAPE is made available to D.H., E.P., and C.C., and the rest of the students in the class.

24. Plaintiffs seek declaratory relief that Defendants' violations of IDEA, in their administration of the state complaint process and DEW's general supervisory authority, have resulted in ongoing harm for Plaintiffs and the proposed class, and are substantially likely to result in ongoing systemic harm for additional students with disabilities if relief is not granted. Plaintiffs seek declaratory relief that these systemic, state-level violations of IDEA subject DEW and its Director to liability under the statute.

25. Plaintiffs seek declaratory relief that they have exhausted administrative remedies under IDEA, and that exhaustion is not required and is futile to remedy Plaintiffs' claims, and that Plaintiffs are properly before this Court.

26. Plaintiffs seek declaratory relief that Defendants are depriving them of fundamental rights granted to them under IDEA and substantial educational benefits without due process of law, in violation of the Fourteenth Amendment of the United States Constitution.

27. Plaintiffs seek declaratory relief that Stephen Dackin, in his official capacity as Director of the Ohio Department of Education and Workforce, is a state actor that continues to deprive Plaintiffs of their rights under the color of state law.

28. Plaintiffs seek injunctive relief preventing Defendants from continuing to deprive Plaintiffs, and the proposed class, of their right to procedural safeguards under IDEA, including

an effective and independent state complaint process that follows published policies and procedures, timely corrects noncompliance, and enforces the corrective action required to provide students with disabilities a FAPE.

29. Plaintiffs seek injunctive relief preventing Defendants from continuing to deprive Plaintiffs, and the proposed class, of their right to a FAPE under IDEA, including the arbitrary reduction of compensatory education awards, unreasonable delays in corrective action, and the ongoing failure to enforce corrective action including the provision of compensatory education.

30. Plaintiffs seek injunctive relief preventing Defendants from continuing to deprive Plaintiffs, and the proposed class, of substantial educational benefits without the due process rights they are entitled to under the 14th Amendment of the U.S. Constitution.

31. Plaintiffs seek injunctive relief that requires Defendants to fully comply with IDEA requirements and its general supervisory obligations as the SEA, including taking steps to correct remaining instances of known noncompliance and enforce corrective action, determine whether any remaining students that were not in OEC's sample were denied a FAPE and require compensatory education services, whether students that moved, graduated, or otherwise left their school districts are entitled to compensatory education services to remedy their FAPE denial, and whether the significant delay of corrective action and ongoing failure to enforce corrective action has resulted in further denials of FAPE and a need for additional compensatory services for Plaintiffs and the proposed class.

## II. JURISDICTION AND VENUE

32. This action is brought pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*

33. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331, which gives United States District Courts original jurisdiction in suits arising under the Constitution or laws of the

United States and against defendants acting under color of state law, pursuant to 42 U.S.C. § 1983.

34. Jurisdiction is conferred on this Court by 28 U.S.C. § 1343(3), which gives United States District Courts original jurisdiction in suits to provide relief for the deprivation of civil rights under color of state law.

35. In addition, this Court has jurisdiction over the Plaintiffs' claims for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201, 2202 and Fed. R. Civ. P. 57, 65.

36. Venue is proper in the Southern District of Ohio, Eastern Division at Columbus, because the Defendants are located in this District within the meaning of 28 U.S.C. § 1391(b) and because the events, acts, and omissions giving rise to Plaintiffs' Complaint occurred in this district.

## III. PARTIES

37. Plaintiff D.H. is a fifteen-year-old child who is diagnosed with autism, and who resides in the City of Maineville, Warren County, Ohio.

38. Plaintiff D. H. is identified by his school district as a child with a disability entitled to special education services under IDEA.

39. Plaintiffs B.H. and K.H. are the parents of D.H. and reside with D.H. in the City of Maineville, Warren County, Ohio.

40. Pursuant to Fed. R. Civ. P. 5.2(a), D.H. proceeds in this case using his initials because he is a minor child. D.H.'s parents, B.H. and K.H., proceed in this case using their initials to prevent identification of D.H.

41. Plaintiff E.P. is an eleven-year-old child who is diagnosed with autism and ADHD, and who resides with his mother in the City of Batavia, Clermont County, Ohio.

42. Plaintiff E.P. is identified by his school district as a child with a disability entitled to special education services under IDEA.

43. Plaintiff T.P. is the parent of E.P. and resides with E.P. in the City of Batavia, Clermont County, Ohio.

44. Pursuant to Fed. R. Civ. P. 5.2(a), E.P. proceeds in this case using his initials because he is a minor child. E.P.'s parent, T.P., proceeds in this case using her initials to prevent identification of E.P.

45. Plaintiff C.C. is a thirteen-year-old child who is diagnosed with autism, ADHD, Oppositional Defiant Disorder, and anxiety, and who resides with his mother in the City of Cincinnati, Hamilton County, Ohio.

46. Plaintiff C.C. is identified by his school district as a child with a disability entitled to special education services under IDEA.

47. Plaintiff P.H-C. is the parent of C.C. and resides with C.C. in the City of Cincinnati, Hamilton County, Ohio.

48. Pursuant to Fed. R. Civ. P. 5.2(a), C.C. proceeds in this case using his initials because he is a minor child. C.C.'s parent, P.H-C., proceeds in this case using her initials to prevent identification of C.C.

49. Defendant the Ohio Department of Education and Workforce ("DEW") is a public agency of the State of Ohio located in Franklin County, Ohio.

50. DEW is a state educational agency ("SEA"), as defined in IDEA, that receives federal financial assistance to ensure the provision of a free and appropriate public education ("FAPE") to students with disabilities in the state of Ohio. 20 U.S.C. § 1401(32).

51. Defendant Stephen Dackin is the current Director of DEW and is responsible for all of its functions, including those carried out pursuant to IDEA.

## IV. FACTS

52. As the SEA, DEW is responsible for ensuring that every eligible student with a disability in Ohio receives a FAPE. 34 CFR § 300.101; 20 U.S.C. § 1412.

53. DEW is responsible for the general supervision, including monitoring and enforcement, of IDEA in Ohio and is required to ensure effective implementation of procedural safeguards that protect the rights of students with disabilities and their parents. 34 CFR §§ 300.149-300.150; 20 U.S.C. § 1221e-3.

54. A critical piece of these procedural safeguards is the state complaint process that each SEA is required to adopt. 34 CFR §§ 300.151-300.153; 20 U.S.C. § 1221e-3.

55. The Office for Exceptional Children ("OEC") at DEW accepts and investigates state complaints regarding violations of IDEA, including "systemic" complaints that address violations concerning more than one child and complaints brought by third parties, pursuant to 34 CFR §§ 300.151-300.153 and Ohio Admin. Code 3301-51-05(K)(6).

56. As part of both the state complaint process and their general supervisory authority, DEW has an affirmative obligation to correct IDEA violations in a timely manner and to ensure that necessary corrective action is implemented and enforced to achieve 100% compliance, including corrective action for *each* individual child. 34 CFR § 300.151(b); 20 U.S.C. § 1221e-3; OSEP Memo 13-08: Dispute Resolution Procedures under Part B of the Individuals with Disabilities Education Act (Part B), Question B-9, Page 20 (2013); OSEP QA 23-01: State General Supervision Responsibilities Under Parts B and C of the IDEA, Questions B-10 & B-14, Pages 17-19 (2023).

57. DEW is required to correct noncompliance as soon as possible, and in no case later than one year after identification of noncompliance. 34 CFR § 300.600(e); 20 U.S.C. § 1416(a)); OSEP Memo 13-08: Dispute Resolution Procedures under Part B of the Individuals with Disabilities Education Act (Part B), Question B-31, Page 20 (2013).

58. IDEA allows, and DEW's state complaint procedures require, progressive sanctions against local educational agencies ("LEAs") who fail to implement corrective action, in order to ensure compliance and the provision of necessary services to a child or all children with disabilities. Ohio Department of Education and Workforce, Office for Exceptional Children, State Complaint Policy C-5, Page 6 (July 21, 2021); OSEP QA 23-01: State General Supervision Responsibilities Under Parts B and C of the IDEA, Question E-6, Page 36 (2023).

59. On May 31, 2022, Disability Rights Ohio ("DRO") filed a systemic state complaint with DEW's OEC against WCESC and all public-school districts who place students at WCESC for special education services, on behalf of three named students and all similarly situated students with disabilities.

60. The systemic complaint alleged various violations of IDEA resulting in a denial of FAPE for the students there, including but not limited to a failure to provide access to general education curriculum, failure to provide IEP services, failure to provide appropriate behavioral interventions, and a failure to revise IEPs for lack of student progress.

61. The systemic complaint applied to approximately 525 similarly situated students.

62. OEC accepted the systemic complaint, which was labeled CP #0098-2022, and began its investigation in June 2022.

63. OEC issued Letters of Allegations ("LOAs") to WCESC and every school district, informing them of the complaint and the substantive contents of the allegations, on or about July 21, 2022.

64. OEC staff chose a random sample of 203 students, representative of every public district, and reviewed their education records as part of its investigation.

65. OEC conducted on-site visits at WCESC and interviewed WCESC staff and administrators as part of its investigation.

66. OEC conducted parent interviews over the phone and sent a survey to parents as part of its investigation.

67. After approximately five months of investigation, OEC concluded that violations of IDEA occurred at WCESC and approximately 43 school districts.

68. On December 16, 2022, OEC issued separate Letters of Findings ("LOFs") to WCESC and each of the 43 school districts with corrective action that required staff training, amending noncompliant IEPs, significant compensatory education for many of the students, and a requirement to adopt school district policies to better monitor students placed in separate facilities.

69. 97 students out of the 203 students in the sample were awarded compensatory education services ranging from 12 hours to over 200 hours of educational instruction each.

70. None of the parents or students at WCESC that were covered by the systemic complaint, including Plaintiffs B.H. and K.H., T.P., or P-H.C., were notified by OEC, WCESC, or their school districts that violations of IDEA had occurred, that corrective action had been issued, that their child had been or may have been denied FAPE, or that they had been awarded compensatory education.

71. IDEA and its implementing regulations are silent as to whether state complaints may be appealed, and the Office of Special Education Programs ("OSEP") at the U.S. Department of Education guidance has left this decision up to each state. OSEP Memo 13-08, July 13, 2013, Question B-32, Page 31.

72. IDEA requires DEW to adopt written state complaint procedures and disseminate these procedures to all interested parties including parents, advocacy organizations such as DRO, parent training centers, and other relevant parties. 34 CFR § 300.151(a); 20 U.S.C. § 1221e-3.

73. DEW's written state complaint procedures explicitly state that there is no internal administrative appeal or reconsideration process for state complaint findings, but parties may file a due process complaint regarding the findings of a state complaint. Ohio Department of Education and Workforce, Office for Exceptional Children, State Complaint Procedures C-5, effective July 27, 2021.

74. After the LOFs were issued, on January 6, 2023, WCESC's Superintendent and legal counsel demanded an in-person meeting with DEW senior leadership and threatened litigation over the LOFs and corrective action issued by OEC.

75. DEW senior leadership, including but not limited to the State Superintendent of Public Instruction, Chief Legal Counsel, Chief of Staff, and others, met privately with WCESC in-person on January 18, 2023.

76. No students, parents, guardians, or DRO were aware that this meeting was taking place nor were they invited to attend.

77. On January 19, 2023, DEW Chief Legal Counsel informed WCESC that in response to their meeting, DEW was "extending" the timelines for corrective action, and it would "review" the LOFs.

78. On January 20, 2023, at the instruction of DEW senior leadership, OEC "extended" all corrective action due in January 2023 for WCESC and every school district, including amending noncompliant IEPs, with no updated due date.

79. WCESC staff emailed several of the school districts informing them that DEW senior leadership had paused corrective action based on their demand and encouraged school districts to submit "appeals."

80. Approximately seven school districts out of 43 submitted "appeals" or "requests for reconsideration" to DEW and threatened litigation regarding the findings and corrective action.

81. None of the school districts nor WCESC filed a due process complaint over any findings or corrective action that related specifically to their district, as allowed by DEW's state complaint policy.

82. On or about January 30, 2023, DEW senior leadership instructed OEC to "pause" all corrective action for WCESC and every school district indefinitely.

83. On January 30, 2023, OEC issued letters to WCESC and all 43 school districts indicating that corrective action was paused indefinitely. No other information was included in the letters.

84. DEW senior leadership unilaterally decided to conduct an internal reconsideration of the findings and corrective action for WCESC and all 43 school districts, despite a vast majority of districts not submitting appeals, in explicit violation of its own policies and procedures.

85. DEW senior leadership never advised WCESC, or the school districts that submitted appeals, that DEW's published policy prohibited such appeals.

86. At no time did DEW senior leadership consult with the OEC staff that investigated the complaint, and that typically oversee IDEA complaints, about DEW's decision to pause corrective action and reconsider the LOFs, even after several OEC staff members expressed concerns that DEW was violating its own policies and IDEA.

87. On January 30, 2023, DRO submitted a public records request to DEW regarding the status of the complaint, communications with WCESC and school districts, and corrective action. Despite increasingly specific requests identifying CP #0098-2022, individual DEW employees, and date ranges, DEW issued several denials of the records to DRO for being too broad and did not issue any additional updates on the status of the corrective action at that time.

88. On May 12, 2023, at the direction of DEW senior leadership, OEC issued a memo to DRO, OSEP, WCESC, and the school districts, indicating that corrective action was still paused as DEW conducted a "review." The letter reiterates that all corrective action is still due by December 23, 2023, and makes no mention of any substantive changes to the LOFs or corrective action plans, or any reconsideration or appeal process.

89. Throughout 2023, DEW senior leadership met privately with the WCESC Superintendent and legal counsel and some of the school districts regarding proposed revisions to the LOFs and corrective action plans.

90. At no time were parents, students, or DRO notified that this reconsideration process was occurring or that any substantive revisions to corrective action were being considered. Parents and students were completely and intentionally excluded from participating in or providing information for the reconsideration.

91. DEW produced incomplete records regarding the complaint in response to DRO's January 30, 2023 public records request on August 17, 2023.

92. In September 2023, DRO requested a meeting with DEW to enquire about the status of the complaint. At that meeting, DEW legal counsel informed DRO that the LOFs and corrective action were being unilaterally and substantively revised by using a "qualitative analysis" to re-calculate compensatory education awards based on updated documentation submitted by only school districts.

93. After several attempts at getting additional records to determine what actions were being taken with respect to the complaint, DRO received more complete records in response to its requests in October 2023. Notably absent from this production was any information regarding the "qualitative analysis" being used to revise compensatory education awards to the students.

94. Parents or students were not provided notice or the opportunity to submit any information or documentation as part of DEW's "qualitative analysis."

95. The "reconsideration" process lasted for more than 11 months while all corrective action was paused, and no further clarification was provided by DEW.

96. DEW began issuing revised LOFs and corrective action plans on a rolling basis beginning in December 2023, more than 18 months after the complaint had been filed. A majority of the revised LOFs were not issued until January 2024.

97. DEW's revised LOFs and corrective action plans resulted in a substantial loss of compensatory education for a majority of the students. A small minority of affected students had their compensatory education awards increased after the revisions.

98. Districts that did not request a reconsideration and did not participate in the reconsideration process or submit additional documentation still had their corrective action plans

revised. A re-calculation of compensatory education for students occurred even where a district did not provide any documentation to support the re-calculation.

99. The revised LOFs provided for an entire additional year to complete corrective action, with final completion due in December 2024, more than two-and-a-half years after the complaint was filed.

100. During the 18 months that corrective action was delayed by DEW, some students moved or left their districts, others graduated or aged out of services, and as a result DEW eliminated many of their compensatory education awards without an appropriate analysis of whether they still required these service hours to receive FAPE. It did so on an inconsistent basis, with some students still receiving compensatory education awards and others having their awards eliminated without further explanation.

101. The delay of corrective action and provision of FAPE caused by the reconsideration process resulted in additional lengthy denials of necessary educational services to students at the WCESC.

102. Despite having significant evidence of widespread, systemic noncompliance gathered by its own OEC, DEW began closing the complaint and refused to address whether the hundreds of other similarly situated students not included in the sample required compensatory education services to receive a FAPE.

103. Upon information and belief, once the revised LOFs were issued in January 2024, DEW abandoned enforcement of its own corrective action. Districts who did not submit service logs and proof of compliance received no further follow up communication, corrective action, or consequences, in direct violation of DEW's enforcement obligations under IDEA.

104. DEW's refusal to fully enforce corrective action has left these students, many of whom are at-risk and multi-system involved youth (children with complex needs that require coordinated services from multiple public agencies such as developmental disabilities agencies, juvenile justice, children's services, or mental health and addiction services), without the special education services they need to make adequate progress and receive a FAPE.

105. D.H., E.P., and C.C. are three of at least 90 students from the original sample that had their compensatory education hours recalculated.

106. D.H. had his compensatory education hours significantly reduced by the revision.

107. E.P. and C.C. both had their hours increased by the revision.

108. B.H. and K.H., T.P., and P.H-C. all expressed interest and cooperation in their children receiving the compensatory education they were entitled to.

109. None of the named Plaintiffs received the compensatory hours they were entitled to because of DEW's lack of enforcement of the corrective action.

110. Defendants' actions are in direct violation of DEW's obligation to ensure IDEA compliance and that students with disabilities receive a FAPE.

111. Defendants' actions violate the IDEA requirement to timely correct noncompliance and ensure that corrective action is implemented in one year or less, with no exceptions.

112. Defendants' actions violate DEW's obligation to ensure that there are appropriate procedural safeguards in place, including an effective and neutral state complaint process, for parents and students with disabilities to protect their rights.

113. Defendants' actions are in violation of DEW's general supervisory requirements to correct noncompliance for each individual student, including those students involved in systemic complaints.

114. Defendants' actions continue to deprive Plaintiffs, and the proposed class, of a FAPE, with significant risk of increasing educational harm as the class of students are denied critical gap-closing services.[4]

115. Defendants' actions continue to deprive Plaintiffs, and the proposed class, of substantial educational benefits without due process, in violation of the 14th Amendment of the U.S. Constitution.

**D.H. and his parents B.H. and K.H.**

116. At the time the systemic complaint was filed, D.H. was an eleven-year-old sixth-grade student residing in the Little Miami Local School District and had been placed at WCESC by his school district of residence for special education services since 2018.

117. D.H. was chosen randomly for review by OEC as part of the student sample for state complaint CP # 0098-2022.

118. B.H., D.H.'s father, was contacted by OEC between June and August of 2022 during the investigation and spoke to an investigator about D.H.'s experiences at WCESC.

---

[4] Several courts have recognized that while compensatory education is a remedy for a past FAPE denial and deficiency, it acts as "discretionary, prospective, injunctive relief crafted by a court to remedy what might be termed an educational deficit created by an educational agency's failure over a given period of time to provide a FAPE to a student." *G ex rel. RG v. Fort Bragg Dependent Schs.*, 343 F.3d 295, 309 (4th Cir. 2003). Courts have also recognized that the educational harm to students with disabilities who are denied FAPE can compound over time. "[A]n IEP conforming to that [Rowley] standard carries no guarantee of undoing damage done by prior violations. As this case demonstrates, moreover, that damage may be quite severe: according to expert testimony, Mathew not only failed to keep pace with his peers under the school district's IEP, but actually learned 'counterproductive' compensatory techniques that he must now unlearn before he may advance." *Reid ex rel. Reid v. D.C.*, 401 F.3d 516, 523 (D.C. Cir. 2005). "Although ordinary [educational programs] need only provide some benefit, compensatory awards must do more - they must compensate." *Draper v. Atlanta Indep. Pub. Sch.* 518 F.3d 1275 (11th Cir.2008)(citing *Reid*, 401 F.3d at 516, 525)(internal quotation marks omitted). "Compensatory awards should place children in the position they would have been in but for the violation of the Act." *Id.* (citing *Reid*, 401 F.3d at 518).

119. OEC found that D.H. was denied a FAPE and D.H. was awarded 109 hours of compensatory education in December 2022.

120. B.H. and K.H. were not notified by OEC, WCESC, or Little Miami Local School District that D.H. was denied a FAPE or that D.H. was awarded 109 hours of compensatory education.

121. D.H.'s school district Little Miami did not request an appeal or reconsideration of the LOF or corrective action and did not participate in, or submit any additional documentation for, the reconsideration process or "qualitative analysis."

122. B.H. and K.H. were never notified that a reconsideration was occurring and were not afforded any opportunity to participate or to provide additional information or documentation.

123. D.H. was originally awarded 109 hours of compensatory education in the areas of functional academics, communication, behavior, gross motor, and fine motor. A primary reason D.H. was awarded such services is because his school district and WCESC failed to locate any IEP at all for him for a portion of the complaint period, leading OEC to conclude that D.H. was not provided IEP services during this period. The IEP was never located or provided during the reconsideration process.

124. Despite this lack of documentation, D.H.'s compensatory education award was reduced to 35 hours after the reconsideration, a loss of 74 hours. The revised LOF reduced hours in every goal area and eliminated D.H.'s compensatory education in the areas of communication and behavior, which B.H. and K.H. believe to be D.H.'s largest areas of need to support his functional independence. The revised LOF did not address the lack of an IEP in effect during

part of the complaint period, how the conclusions were reached about the number of hours required to provide D.H. with a FAPE, or why the communication services were eliminated.

125. By the time DEW issued the revised LOFs, D.H. was an eighth-grade student still placed at WCESC for his educational services and had gone more than 18 months without the necessary corrective action and compensatory services for the FAPE denial.

126. During the delay, D.H.'s lack of progress continued, and his behavioral needs became increasingly more significant.

127. DRO discovered that D.H.'s compensatory education had been significantly reduced and notified B.H. and K.H. of the details of D.H.'s FAPE denial and DEW's actions with respect to the state complaint, in approximately February 2024.

128. B.H. and K.H. decided, after two years of waiting for D.H. to be provided a FAPE and recognizing an immediate need for critical services, to withdraw D.H. from WCESC and his school district after the school year ended in May 2024.

129. The family chose to utilize health insurance to pay for private ABA therapy to try to decrease D.H.'s behaviors, increase his functional communication, and allow him to gain more independence while D.H. still had time to do so. These services started around September 2024.

130. D.H.'s school district contacted B.H. and K.H. after his withdrawal to discuss his compensatory education award and the provision of services, but an appropriate service provider that could meet D.H.'s now-intensive needs could not be located and communication from the district ceased.

131. DEW did not follow up on D.H.'s compensatory education services and failed to enforce the corrective action, resulting in D.H. receiving nothing.

132. D.H.'s behavior continued to sharply regress after reaching puberty in 2025, and he was dismissed from ABA therapy in November 2025 after an in-patient psychiatric hospitalization.

133. D.H. was re-enrolled in his school district of residence in February 2026. He is fifteen years old and a 10th grade student.

134. D.H. is not independent in toileting, engages in self-injurious and physically aggressive behaviors, and requires at least 2:1 adult support in most settings.

135. D.H. was unable to be served in a home instruction program that took place at the district school after-hours with 2:1 adult support for 6 hours per week.

136. D.H. now receives special education services from his school district in a highly segregated residential facility, Tiffin Developmental Center, more than three hours from his family home.

137. To date, D.H. has not received any of the compensatory education he is entitled to.

138. DEW's violations of its published policies and procedures, its unreasonable delay in correcting IDEA noncompliance, its arbitrary reduction of D.H.'s compensatory education award without due process, and its ongoing failure to enforce required corrective action, has contributed to D.H.'s regression and prevented him from accessing necessary services during a critical time period in his adolescent development. DEW's actions continue to deny D.H. a FAPE.

**E.P. and his mother T.P.**

139. At the time the systemic complaint was filed, E.P. was an eight-year-old third-grade student residing in Little Miami Local School District and had been placed by his school district of residence at WCESC since approximately January 2022.

140. E.P. was chosen randomly for review by OEC as part of the student sample for state complaint CP # 0098-2022.

141. T.P., E.P.'s mother, was contacted by OEC between June and August of 2022 during the investigation and spoke to an investigator about E.P.'s experiences at WCESC.

142. OEC found that E.P. was denied a FAPE, and E.P. was awarded 47 hours of compensatory education in the areas of speech, communication, self-regulation, behavior, and fine motor skills.

143. T.P. was not notified by OEC, WCESC, or Little Miami Local School District that E.P. was denied a FAPE or that E.P. was awarded 47 hours of compensatory education.

144. After receiving no information for five months, T.P. contacted the OEC investigator via email in March of 2023 to request an update on the status of the complaint and any resolution. The OEC investigator informed T.P. that E.P. had been awarded 47 hours of compensatory education and provided T.P. with a copy of the complaint findings and corrective action dated December 16, 2022. The investigator further informed T.P. that WCESC and a few school districts had contacted DEW's legal department with "concerns" regarding the findings and corrective action, and that the legal department had placed corrective action on hold with no indication of when it might be reinstated.

145. T.P. contacted the same OEC investigator via email again in October 2023 to request an update on the status of the complaint and corrective action. T.P. informed the

investigator that the family had moved out of Little Miami School District and provided their new address in Batavia, Ohio.

146. The OEC investigator informed T.P. that after reviewing the findings and the “concerns” expressed by WCESC and a few of the school districts, DEW’s legal team and leadership outside of OEC decided compensatory education awards should be re-calculated. The investigator informed T.P. that school districts were being provided with more time to submit “updated” student records, and that Little Miami School District would be responsible for arranging any compensatory education services even though E.P. had moved out of the district.

147. T.P. requested a letter indicating the amount of compensatory services owed to E.P. and was informed by the OEC investigator that it was not yet available. T.P. did not hear from the OEC investigator again.

148. E.P.’s school district, Little Miami, did not request an appeal or reconsideration of the LOF or corrective action and did not participate in, or submit any additional documentation for, the reconsideration process or “qualitative analysis.”

149. Little Miami’s special education coordinator and interim special education director contacted T.P. on May 24, 2024 to inform her that T.P. had been awarded 57 hours of compensatory services in the areas of speech, communication, self-regulation, behavior, and motor skills, and to begin arrangements for the provision of services.

150. T.P. provided Little Miami with suggested service providers and on May 29, 2024, T.P. provided the name and contact information of the special education director at E.P.’s new district, Batavia City Schools. T.P. did not receive a reply from Little Miami.

151. On September 20, 2024, T.P. contacted Little Miami’s special education director again to request an update on the provision of E.P.’s compensatory services, but never received a

reply. T.P. contacted the special education director at Batavia City Schools to determine if Little Miami had reached out about the provision of compensatory education services, and it had not.

152. E.P. never received any of the compensatory education he is entitled to.

153. DEW did not follow up on E.P.'s compensatory education services and failed to enforce the corrective action.

154. Although E.P. joined general education classes at Batavia City Schools, his behavior deteriorated. E.P. displayed behaviors such as eloping from the classroom, physical aggression towards peers and staff, and an inability to participate in classroom activities. E.P.'s academic skills continued to stagnate or decline.

155. T.P. withdrew E.P. from Batavia City Schools in approximately August 2025 and utilized state scholarship funding to provide him with private instruction from an intervention specialist in a homeschool setting. T.P. hopes to re-enroll E.P. at Batavia City Schools, but believes that he will need significant structured behavioral interventions and social-emotional instruction, the exact services he should have received as compensatory education, to receive FAPE and make the necessary progress to successfully rejoin the district school.

156. DEW's unreasonable delay in correcting IDEA noncompliance, and its ongoing failure to enforce any corrective action, prevented E.P. from accessing necessary services required for him to receive a FAPE.

**C.C. and his mother P. H-C.**

157. At the time the systemic complaint was filed, C.C. was a nine-year-old third-grade student residing in the Winton Woods City School District and had been placed by his district of residence at WCESC for special education services since December 2021.

158. C.C. was chosen randomly for review by OEC as part of the student sample for state complaint CP # 0098-2022.

159. C.C.'s mother, P.H-C., received a survey to complete as part of OEC's investigation of the complaint and submitted the survey in October of 2022.

160. OEC found that C.C. was denied a FAPE, including a lack of access to the general education curriculum, and excessive incidents of restraint and seclusion totaling nearly 30 hours in a six-month period without meaningful revisions of C.C.'s behavioral interventions or services. C.C. was awarded 15 hours of compensatory education services in the area of social-emotional skills.

161. P.H-C. was not notified by OEC, WCESC, or Winton Woods City School District that C.C. was denied a FAPE or that C.C. was awarded 15 hours of compensatory education.

162. C.C.'s school district did not request an appeal or reconsideration of the LOF or corrective action, but did submit additional documentation from the 2022-2023 school year for the reconsideration process in October 2023 after a request from DEW.

163. P.H-C. was never notified that a reconsideration was occurring and was not afforded any opportunity to participate or provide additional information or documentation.

164. After finding ongoing academic regression and no updated restraint and seclusion documentation for the 2022-2023 school year, the revised LOFs increased C.C.'s compensatory education award to 40 hours in the areas of behavior, social-emotional skills, and sensory processing.

165. By the time the revised LOFs were issued in January 2024, C.C. was an eleven-year-old fifth-grade student. C.C. had been removed from WCESC by his IEP team and placed at

a program called Stepping Stones in Indian Hill, Ohio for special education services. Shortly thereafter, the program ceased serving students in C.C.'s age group.

166. C.C. returned to his district of residence for the 2024-2025 school year and has remained there since.

167. P.H-C. has never received communication from the district regarding C.C.'s compensatory education services. C.C. has never received the compensatory education services he is entitled to.

168. DEW has not followed up on C.C.'s compensatory education services and has not enforced the corrective action.

169. Despite being identified as gifted in reading, C.C. has never recouped the educational losses he suffered during the period of FAPE denial and has never been able to participate in advanced programming.

170. C.C. has made little progress, and his behavioral deficits and social-emotional needs continue to significantly impact his learning. Upon information and belief, C.C. has been suspended from school for at least 20 days during the 2025-2026 school year.

171. DEW's unreasonable delay in addressing IDEA noncompliance and ensuring that C.C. received a FAPE, and its ongoing failure to enforce corrective action at all, has contributed to C.C.'s ongoing behavioral concerns and academic regression, and prevented him from accessing the services necessary for him to receive a FAPE.

**Class Allegations**

172. Pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of the following Class:

All students, by and through their parents and guardians, who were placed by their school districts at WCESC and were the subjects of state complaint CP # 0098-2022.

173. *Ascertainability:* Each member of the Class is known and can be identified readily through records possessed or accessible by Defendants. DEW, as the SEA, has the ability and authority to access records maintained by WCESC and school districts that identify the students placed at WCESC facilities, and this list represents each and every member of the Class.

174. *Numerosity:* The Class is so numerous that individual joinder is impractical. The Class consists of approximately 525 students, as well as the students' parents and guardians.

175. *Commonality*: This case presents numerous questions of law and fact with answers common to the Class that predominate over questions affecting only individual class members. Common questions include:

a) Whether Plaintiffs and the class are all harmed by the same "reconsideration" process undertaken by DEW, which denies them access to guaranteed procedural safeguards and a FAPE;

b) Whether Defendants are violating IDEA by failing to maintain an effective and neutral state complaint process for parents and students with disabilities, required by the Act and its implementing regulations, by engaging in a reconsideration process with school districts and WCESC that intentionally excluded parents/guardians and students;

c) Whether Defendants are violating IDEA by unreasonably delaying corrective action for known IDEA violations and FAPE denials by more than one year, in this case nearly four years;

d) Whether Defendants are violating IDEA by failing to exercise general supervisory, monitoring, and enforcement authority to timely correct IDEA violations and ensure FAPE is provided to students with disabilities;

e) Whether Defendants are violating the 14th Amendment of the U.S. Constitution by depriving Plaintiffs and the class access to the procedural safeguards and due process rights they are entitled to, resulting in a denial of educational benefits without due process of law;

f) Whether Defendants are violating IDEA by failing to enforce corrective action and take the steps required by the Act to ensure an effective complaint system for parents;

g) Whether Defendants should be enjoined from violating IDEA by modifying, reducing, or eliminating compensatory education awards of Plaintiffs and the proposed class without notice, participation, or due process, arbitrarily eliminating compensatory education awards of students that no longer attend the same school districts, refusing to exercise its general supervisory authority and including the remaining students in the class in their complaint investigation, and refusing to properly enforce corrective action on an ongoing basis;

h) Whether Defendants should be enjoined from engaging in such conduct in the future.

176. *Typicality:* Plaintiffs' claims are typical of the Class they seek to represent. D.H., by and through his parents B.H. and K.H., E.P., by and through his parent T.P., and C.C., by and through his parent P.H.-C., were placed at WCESC by their school districts, were subject to the denial of a FAPE by WCESC and their school districts, were subjects of state complaint CP #

0098-2022, and were harmed, and continue to be harmed, by the conduct of Defendants described herein.

177. *Adequacy of Class Representatives*: Plaintiffs will fairly and adequately protect the interests of the Class they seek to represent. They are aware of their duties to absent class members and are determined to faithfully discharge their responsibilities. Plaintiffs' interests are aligned, and not antagonistic to, the interests of the Class.

178. *Adequacy of Class Counsel*: Plaintiffs have retained competent counsel with considerable experience in disability rights issues (including issues related to the IDEA), as well as class actions and other complex litigation. Plaintiffs' counsel has done substantial work in identifying and investigating potential claims in this action, has considerable knowledge of the applicable law, and will devote time and financial resources necessary to vigorously prosecute this action. They do not have any interests adverse to the Class.

179. Pursuant to Fed. R. Civ. P. 23(b)(2), Plaintiffs seek certification of a class for declaratory and injunctive relief. Defendants' selective administration of the state complaint procedures, failure to conduct a neutral process that provides parents and students with procedural safeguards and due process, and failure to enforce necessary corrective action to provide students with a FAPE in a timely manner consistent with IDEA, creates a systemic problem that implicates the integrity and neutrality of the DEW's dispute resolution system and affects not only the entire class of students and parents, but is substantially likely to affect additional students with disabilities if not remedied. As such, the declaratory and injunctive relief that Plaintiffs seek would remedy the procedural violations of IDEA that resulted in the substantive denial of FAPE of each class member, and the constitutional violations under the

Fourteenth Amendment, without the need of this Court to conduct an individualized assessment of each student's FAPE claims.

## V. FIRST CAUSE OF ACTION AGAINST THE OHIO DEPARTMENT OF EDUCATION AND WORKFORCE– FAILURE TO MAINTAIN PROCEDURAL SAFEGUARDS UNDER THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT (IDEA) 20 U.S.C. § 1415(a)

180. IDEA provides that "[a]ny State educational agency, State agency, or local educational agency that receives assistance under this subchapter shall establish and maintain procedures in accordance with this section to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education by such agencies." 20 U.S.C. § 1415(a).

181. To carry out the activities in IDEA, Congress granted broad authority to the Department of Education Secretary to promulgate rules, including rules related to procedural safeguards. 20 U.S.C. § 1221e-3.

182. In doing so, IDEA's implementing regulations specifically provide for a written state complaint procedure that SEAs are required to adopt. 34 C.F.R. § 300.151.

183. IDEA's implementing regulate

184. ons state that each SEA "must adopt written procedures for—(1) Resolving any complaint, including a complaint filed by an organization or individual from another State, that meets the requirements of §300.153 by—(i) providing for the filing of a complaint with the SEA; (2) [w]idely disseminating to parents and other interested individuals, including parent training and information centers, Protection and Advocacy (P & A) agencies, and other appropriate entities, the State procedures under §§ 303.151 through 300.153." 34 C.F.R. § 300.151.

185. This complaint procedure must include an independent determination as to whether the educational agency violated IDEA, as well as effective implementation of corrective action. 34 C.F.R. § 300.152.

186. DEW must "identify in writing to local educational agencies located in the State" and to the United States Department of Education, any "rule, regulation, or policy as a State-imposed requirement that is not required by this chapter and Federal regulations." 20 U.S.C. § 1407 (a)(2).

187. DEW is a state educational agency as defined by IDEA and receives federal assistance, therefore is subject to the requirements contained in the Act.

188. DEW has adopted a written state complaint procedure as required by the Act, which it is failing to adhere to in the case of state complaint CP # 0098-2022.

189. DEW's published and disseminated procedures clearly state that an internal appeal or reconsideration process does not exist, and that state complaint decisions are final.

190. Further, in accordance with IDEA, DEW's published and disseminated procedures clearly state that if a local educational agency is found noncompliant, DEW will ensure that corrective action is effectively and timely implemented within a specified timeframe, not to exceed one calendar year. If a district fails to implement corrective action within the allotted timeframe, DEW will impose progressive sanctions to achieve compliance and ensure FAPE for students with disabilities.

191. DEW's ad-hoc reconsideration process violates DEW's written state complaint procedures. DEW's reconsideration process was not promulgated by state regulation, not created by state statute, and is not written or publicized.

192. DEW has not identified its reconsideration process to Ohio's local education agencies or to the United States Department of Education.

193. DEW's reconsideration process has not been written or disseminated outside of DEW.

194. DEW's unjustifiable delays and ongoing failure to enforce corrective action and ensure FAPE is provided to the Plaintiff class in CP # 0098-2022 violates DEW's state complaint procedures.

195. The purpose of "widely disseminating" the written state complaint procedures is so parents are informed of their rights and can fully participate in the complaint process that determines FAPE for their child.

196. By creating a back-door avenue for districts to demand their own appeal process that is not available to parents or students, Defendants have made the Plaintiff class, and likely other students and parents, unsure of their rights and unable to access a fair state complaint system.

197. By failing to maintain practices and procedures in accordance with IDEA, and instead engaging in an arbitrary reconsideration process that is selectively applied to the benefit of local educational agencies and to the detriment of students and parents, Defendants are violating an explicit requirement of IDEA to guarantee these procedural safeguards for parents and students with disabilities.

198. By ignoring this obligation to develop and implement written procedures and aligned practices consistent with IDEA, and guarantee effective procedural safeguards, Defendants are denying Plaintiffs and the class of federally protected rights and are liable to the Plaintiff class of students with disabilities and their parents/guardians.

199. Plaintiffs, on behalf of the Class, seek a declaration that Defendants are violating IDEA by depriving them of their right to procedural safeguards guaranteed under the Act.

200. In addition, on behalf of themselves and the Class, Plaintiffs seek an injunction obligating Defendants to abide by their own written state complaint policies and ensure an effective and independent state complaint process, pursuant to the IDEA.

## VI. SECOND CAUSE OF ACTION AGAINST THE OHIO DEPARTMENT OF EDUCATION AND WORKFORCE – FAILURE TO CARRY OUT GENERAL SUPERVISION, MONITORING, AND ENFORCEMENT UNDER THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT (IDEA) 20 U.S.C. § 1416(a)

201. DEW is explicitly responsible for the general supervision- including monitoring and enforcement- of IDEA and its implementing regulations. 20 U.S.C. § 1416(a); 34 CFR § 300.149; 34 CFR § 300.600.

202. This includes an affirmative duty to monitor IDEA implementation, identify noncompliance, use appropriate enforcement mechanisms, and correct noncompliance no later than one year after the identification of noncompliance, as both part of its general supervision and monitoring requirements and the state complaint process. 20 U.S.C. § 1416(a); 34 CFR § 300.149; 34 CFR § 300.600.

203. DEW identified IDEA noncompliance and the denial of FAPE to the Plaintiffs class in December of 2022 when it sent out its original LOFs. Under the Act, corrective action should have been completed no later than December 2023.

204. However, Defendants willfully ignored DEW's obligation to correct noncompliance in one year. Instead, DEW senior leadership chose to "pause" corrective action indefinitely without concern regarding the impact on the hundreds of students in the Plaintiff class that DEW was aware were being denied a FAPE.

205. After waiting an entire year to figure out how to appease WCESC and a few school districts with a "reconsideration" and revised corrective action, Defendants issued the revised LOFs between December 2023 and January 2024, and allotted another year for corrective action to be completed.

206. After issuing the revised LOFs, DEW abandoned enforcement of the corrective action and made no effort to ensure that it was implemented at all, let alone within the specified time frame of December 2024. The corrective action has yet to be fully enforced, and many students in the Plaintiff class have received nothing nearly four years after CP # 0098-2022 was filed.

207. DEW is knowingly allowing students with disabilities in the Plaintiff class to be denied FAPE for an inexplicable and unjustifiable amount of time.

208. This delay has caused even more unnecessary educational harm beyond what students had already been subjected to when the complaint was filed.

209. There is no identifiable reason for Defendants to delay corrective action for this length of time and forego all enforcement of the required services to provide the Plaintiff class with a FAPE, and by doing so, they are liable to the Plaintiff class of students.

210. As a result of Defendants' failure to enforce IDEA and correct noncompliance in a timely fashion, Plaintiffs and the Class are being denied their rights under the IDEA and are suffering ongoing educational harm. On behalf of themselves and the Class, Plaintiffs seek a declaration that Defendants are violating IDEA by failing to carry out DEW's supervision, monitoring, and enforcement obligations under the Act, including the failure to correct IDEA noncompliance within one year. Plaintiffs seek an injunction obligating Defendants to abide by the IDEA and ensure that correction of noncompliance and enforcement of all corrective action

occurs in one year or less in every circumstance, and in this case, occurs within one year of the issuance of such injunction.

## VII. THIRD CAUSE OF ACTION AGAINST THE OHIO DEPARTMENT OF EDUCATION AND WORKFORCE – FAILURE TO CARRY OUT GENERAL SUPERVISORY AUTHORITY AND ENSURE FAPE FOR STUDENTS WITH DISABILITIES UNDER THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT (IDEA) 20 U.S.C. §§ 1412(a)(1) & (11)(A)

211. IDEA confers upon the SEA, in this case DEW, the obligation to ensure that all students with disabilities in the state have FAPE available to them. 20 U.S.C. § 1412(a)(1).

212. To carry out this obligation, DEW is granted general supervisory authority to ensure that— (i) the requirements of IDEA are met; and (ii) all educational programs for children with disabilities in the State, including all such programs administered by any other State agency or local agency— (I) are under the general supervision of individuals in the State who are responsible for educational programs for children with disabilities; and (II) meet the educational standards of the State educational agency. 20 U.S.C. § 1412(a)(11)(A).

213. The SEA's general supervisory authority is interpreted to require correction of all instances of IDEA violations or noncompliance, ensure 100% compliance, and guarantee FAPE to each individual child that has been impacted by noncompliance. 20 U.S.C. § 1221e-3; 34 CFR § 300.151(b); OSEP Memo 13-08: Dispute Resolution Procedures under Part B of the Individuals with Disabilities Education Act (Part B), Question B-9, Page 20 (2013); OSEP QA 23-01: State General Supervision Responsibilities Under Parts B and C of the IDEA, Questions B-10 & B-14, Pages 17-19 (2023).

214. Defendants had concrete knowledge that the requirements of IDEA, including the provision of FAPE, were not being met by WCESC or the school districts that place students there for services. Upon learning of these widespread and systemic violations, DEW had an affirmative obligation to exercise its general supervisory authority to timely correct all violations

of IDEA, ensure 100% compliance, and guarantee a FAPE to each individual child, regardless of the status of the state complaint or WCESC's objections and demands.

215. By actively participating in the efforts of WCESC and school districts to obstruct corrective action and undermine the rights of the Plaintiff class, unreasonably delay implementation and demand changes to compensatory education awards that are not required by law and are prohibited by DEW's own state complaint procedures, Defendants failed to exercise DEW's general supervisory authority, including the obligation to ensure procedural safeguards and the provision of FAPE to the Plaintiff class.

216. In addition, Defendants had knowledge that many of the students in the Plaintiff class that were not included in the complaint sample had likely been denied FAPE. Rather than appropriately carrying out its supervisory authority to address those FAPE denials and determine whether these students required compensatory education, Defendants intentionally ignored these students and their obligation to ensure FAPE was made available to them.

217. Moreover, Defendants had knowledge that a portion of the students in the Plaintiff class had relocated, graduated, aged out of services, or otherwise were no longer enrolled in the same school districts. Rather than abiding by its statutory obligation to determine whether each of these students required compensatory education to receive a FAPE in a consistent manner, Defendants arbitrarily reduced or eliminated some of the compensatory education awards without any justifiable reason.

218. After engaging in these violations of IDEA and issuing revised LOFs and corrective action, Defendants completely abandoned DEW's general supervisory obligations by refusing to enforce the corrective action. This ongoing and blatant disregard of IDEA

requirements and the rights of the Plaintiff class has left many students in the Plaintiff class with nothing, continuing to improperly deny them a FAPE.

219. Since Defendants have failed in exercising general supervisory authority over the educational agencies within DEW's jurisdiction, Defendants are liable to the Plaintiff class for the educational harm and the denial of FAPE that DEW caused and continues to perpetuate.

220. DEW's state-level failure to effectively carry out its general supervisory authority has placed all students with disabilities in Ohio at risk of educational harm. DEW has created a precedent that any educational agency can demand changes to DEW's enforcement or implementation of IDEA, bypass parental due process and procedural safeguards, and be rewarded with delayed or reduced requirements that allow them to continue to deny FAPE to students with disabilities.

221. As a result of Defendants' failure to exercise DEW's mandatory supervisory authority over educational institutions within its purview, Plaintiffs and the Class are being denied their rights under the IDEA. Plaintiffs, on behalf of the Class, seek a declaration that Defendants' conduct violates IDEA, fails to uphold DEW's statutory obligation to exercise supervisory authority, fails to ensure proper implementation and 100% compliance with IDEA, fails to appropriately enforce corrective action requirements, and fails to guarantee a FAPE to students with disabilities in the state, including the Plaintiff class.

222. In addition, on behalf of themselves and the Class, Plaintiffs seek an injunction obligating Defendants to abide by IDEA, exercise DEW's general supervisory authority, immediately enforce all outstanding corrective action, and engage in a good-faith and data-driven review of the entirety of the Class to determine whether each student has received a FAPE or requires compensatory education or other corrective action.

## VIII. FOURTH CAUSE OF ACTION AGAINST STEPHEN DACKIN IN HIS OFFICIAL CAPACITY AS THE DIRECTOR OF THE OHIO DEPARTMENT OF EDUCATION AND WORKFORCE- DEPRIVATION OF CONSTITUTIONAL RIGHTS WITHOUT DUE PROCESS UNDER THE 14th AMENDMENT OF THE UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983

223. The 14th Amendment provides that no state shall deprive any person of life, liberty, or property, without due process of law. U.S. Const. amend. XIV, § 1.

224. 42 U.S.C. § 1983 provides that "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ."

225. The right to FAPE, and the procedural safeguards that assist in guaranteeing FAPE, are fundamental federal rights for students with disabilities and their parents. A FAPE has long been established as a protected property interest under the Fourteenth Amendment. *Doe v. Ohio*, No. 2:91-cv-464, 2004 WL 7347115, at *18 (S.D. Ohio, July 9, 2004) ("Plaintiffs ... have a property right in a free, appropriate public education, secured by the IDEA[.]"). Thus, students with disabilities and their parents must be afforded the procedural safeguards and due process requirements they are entitled to under IDEA before a student is deprived of this right.

226. Under IDEA, not only are local educational agencies such as school districts responsible for providing a FAPE to students with disabilities, but the SEA likewise has an obligation to ensure that students with disabilities receive a FAPE through its general supervision, monitoring and enforcement activities and procedural safeguard guarantees. 20 U.S.C. § 1412(a)(1); 20 U.S.C. § 1412(a)(11)(A); 34 CFR § 300.149; 34 CFR § 300.600.

227. If the SEA becomes aware of a possible systemic denial of FAPE, they must investigate and remedy the full breadth of the denial of FAPE, including each child. 20 U.S.C. § 1412(a)(11); 20 U.S.C. § 1221e-3; 34 C.F.R. § 300.149; 34 CFR § 300.151(b); OSEP Memo 13-08: Dispute Resolution Procedures under Part B of the Individuals with Disabilities Education Act (Part B), Question B-9, Page 20 (2013); OSEP QA 23-01: State General Supervision Responsibilities Under Parts B and C of the IDEA, Questions B-10, B-14, & B-15, Pages 17-20 (2023).

228. Compensatory education is a form of corrective action used to remedy a denial of FAPE or the failure to provide appropriate services. 34 C.F.R. § 300.151(b)(1); *see also Reid ex rel. Reid v. D.C.*, 401 F.3d 516, 524 (D.C. Cir. 2005*)* (requiring compensatory education awards to "be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place").

229. Stephen Dackin ("Director Dackin") serves as the Director of the Ohio Department of Education and Workforce, a role he has held since November 2023. Since that date, Director Dackin has had decision-making authority over DEW's official actions.

230. DEW learned of widespread systemic violations of IDEA during the course of its investigation of CP # 0098-2022, yet it refused to investigate the remaining students in the Plaintiff Class, who were not part of the sample of students covered in DEW's LOFs, as required under the Act. These students and their parents have never been made aware that they were likely denied FAPE. DEW is depriving these members of the Plaintiff Class of their right to appropriate procedural safeguards and due process procedures to enforce their rights.

231. When OEC issued its original Letters of Findings (LOFs) to WCESC and the 43 other school districts in December 2022, OEC ordered, among other corrective action,

compensatory education for certain students. In the sample of 203 students, compensatory education was required for approximately 97 students. OEC's corrective action orders entitled these 97 students to additional educational services and, according to DEW's published state complaint procedures, was a final and non-appealable administrative order.

232. Upon information and belief, Director Dackin was directly involved in discussions with DEW senior leadership about CP # 0098-2022 and the revised LOFs that were issued in December 2023 and January 2024 that modified compensatory education awards without parental involvement.

233. By engaging in a process of "reconsideration" with WCESC and school districts that was unavailable and inaccessible to the Plaintiff class, and not authorized by law and DEW's published procedures, Director Dackin, acting under the color of law in his official capacity, has deprived Plaintiffs and the Class of their rights without the appropriate due process procedures required by law.

234. DEW unjustly and arbitrarily modified OEC's grant of entitlement to compensatory education for members of the Plaintiff class. DEW intentionally failed to notify the public or the Plaintiff class about its reconsideration process and intentionally failed to inform parents of students who were awarded compensatory education about the modification of compensatory education, and denied them the opportunity to participate in the process.

235. By taking away the OEC's grant of entitlement to compensatory education for certain students and their access to a FAPE, DEW is depriving members of the Plaintiff class of their IDEA substantive rights without due process of law.

236. Further, by refusing to take appropriate steps under IDEA and DEW's general supervisory obligations to determine whether the remaining students not included in the sample

had been denied FAPE and may require compensatory education services, Defendant Stephen Dackin, under the color of state law, is depriving members of the Plaintiff class of their rights without their knowledge, participation, or due process of law.

237. Finally, by refusing to enforce any corrective action at all, including compensatory education services, after the revised LOFs were issued, Director Dackin as the leader of DEW, and under the color of state law, has deprived the Plaintiff Class of an effective procedural safeguard process and their substantive right to a FAPE without due process of law.

238. As a result of Director Dackin's conduct in his official capacity as the leader of DEW, Plaintiffs and the Class have been denied their rights under the 14th Amendment of the U.S. Constitution. On behalf of themselves and the Class, Plaintiffs seek an injunction obligating Director Dackin to abide by IDEA and the 14th Amendment and prohibit DEW from modifying the educational services that members of the Plaintiff class are entitled to without their notice, participation, or appropriate due process procedures under the law, refusing to determine whether the remaining students in the Plaintiff Class are entitled to compensatory education services to receive a FAPE, and refusing to enforce corrective action including the provision of compensatory education for the Plaintiff Class.

## IX. PRAYER FOR RELIEF

Plaintiffs request that this Court:

A. Assume jurisdiction over this matter;

B. Find that Plaintiffs are not required to exhaust administrative remedies under IDEA and are properly before this Court for relief;

C. Certify this case as a class action pursuant to Fed. R. Civ. P. 23(b)(2);

D. Declare that Defendants are violating IDEA and depriving the Plaintiff class of the procedural safeguards and due process rights guaranteed to them by the Act by engaging in a reconsideration process of state complaint findings and corrective action that is expressly prohibited in DEW's state complaint procedures, and intentionally excluding the Plaintiff class from participating in that process;

E. Declare that Defendants' unreasonable delay of corrective action violates DEW's explicit general supervisory, monitoring, and enforcement obligations under IDEA and is causing substantial educational harm and a denial of FAPE to the Plaintiff class;

F. Declare that Defendants' conduct constitutes a disregard for, and a failure to carry out, DEW's general supervisory authority requirements under IDEA and has caused substantial educational harm and the denial of a FAPE to the Plaintiff class;

G. Declare that Defendants' ongoing refusal to comply with IDEA and enforce corrective action creates a systemic issue that harms the entire Plaintiff class, denies them a FAPE, creates a substantial risk of harm to other students with disabilities that rely on DEW to protect and enforce their rights, and subjects Defendants to liability to the Plaintiff class;

H. Declare that Director Dackin's actions, as the leader of DEW and acting under the color of law, deprived Plaintiffs and the class of their right to due process procedures under the 14th Amendment of the U.S. Constitution;

I. Enjoin Defendants from arbitrarily modifying, reducing or eliminating any award of compensatory education services, including those of the Plaintiff class, without

appropriate procedural safeguards and proper notice, participation, and due process under the law;

J. Enjoin Defendants from selectively applying state complaint policies and procedures to favor educational agencies, allowing appeals and reconsiderations that are prohibited by DEW's state complaint procedures, engaging in improper back-door consultation with educational agencies that excludes parents and students, and denying parents and students their procedural safeguard rights in the future;

K. Enjoin Defendants from engaging in unreasonable and unjustifiable delays in the appropriate implementation and enforcement of IDEA and all necessary corrective action to achieve compliance, including the provision of FAPE and compensatory education services to the Plaintiff class;

L. Enjoin Defendants from refusing to comply with IDEA by abandoning enforcement of corrective action and the provision of compensatory education, including such compensatory education awarded to the Plaintiff class, and order Defendants to immediately enforce all corrective action;

M. Enjoin Defendants from refusing to exercise DEW's general supervisory responsibilities and require DEW to engage in a data-driven, good-faith analysis as to whether the remaining students in the Plaintiff class that were not part of the sample, and those in the Plaintiff class who have graduated, aged out, or otherwise left their school districts, require compensatory education to remedy denial of FAPE, and order Defendants to award and enforce such compensatory education, or undertake the provision of such services itself;

N. Require Defendants to engage in a data-driven, good-faith analysis as to whether additional steps are required by DEW to remedy the multi-year delay in corrective action implementation and enforcement for the Plaintiff class;

O. Declare Plaintiffs as prevailing parties;

P. Grant any other relief this Court deems just and proper.

Plaintiffs reserve the right to seek attorneys' fees as permitted by law.

Respectfully submitted,

s/ Paige Peal
Paige Peal (0097877)
ppeal@disabilityrightsohio.org
Ohio Disability Rights Law and Policy Center, Inc.
Disability Rights Ohio
200 Civic Center Drive, Suite 300
Columbus, OH 43215
(614) 466-7264 (Phone)
(614) 644-1888 (Fax)

s/Michael Boyle
Michael Boyle (0091162)
mboyle@bgandg.com
Bronstein, Gewirtz & Grossman LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
(212) 697-7296

*Counsel for Plaintiffs*